# 24-2861-cr

To be argued by:
**ASHOK CHANDRAN**

---

United States Court of Appeals
For the Second Circuit

_____

Docket No. 24-2861-cr

_____

UNITED STATES OF AMERICA,

*Appellee,*

-against-

KAREEM BROWNING,

*Defendant-Appellant.*

_____

APPEAL FROM A JUDGMENT OF
THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---

**OPENING BRIEF FOR DEFENDANT-APPELLANT
KAREEM BROWNING**

---

Federal Defenders of New York, Inc.
 Appeals Bureau
52 Duane Street, 10th Floor
New York, New York 10007
Tel. No.: (212) 417-8743

*Attorney for Defendant-Appellant*
**KAREEM BROWNING**

**ASHOK CHANDRAN**,
 *Of Counsel*

## <u>TABLE OF CONTENTS</u>

Table of Contents.................................................................................................. i

Table of Authorities ............................................................................................. ii

Statement of Jurisdiction .................................................................................... 1

Question Presented .............................................................................................. 1

Statement of the Case .......................................................................................... 2

Summary of Argument ........................................................................................ 5

Argument............................................................................................................... 6

    I.     The District Court Erred In Imposing The Electronic Search Condition ...................................................................................................... 6

          A.    Standard of Review.................................................................... 6

          B.    Supervised Release Conditions Must Be Based On Individualized Findings About A Particular Person's Conduct............................. 6

          C.    There's No Nexus Between Mr. Browning's Conduct And The Electronic Search Condition............................................................. 9

               1.    The presence of gun, without more, isn't sufficiently individualized. ................................................................. 9

               2.    Possessing a firearm is not a "robust justification" for an electronic search. ................................................... 11

          D.    This Court Should Strike The Condition Rather Than Remanding For Resentencing. .................................................................. 15

    II.    The Government's Motion To Dismiss Should Be Denied ................... 16

Conclusion........................................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**

*Riley v. California*, 573 U.S. 373 (2014) ...................................................................11, 12

*United States v. Betts*, 886 F.3d 198 (2d Cir. 2018) ........................................................ 7

*United States v. Burden*, 860 F.3d 45 (2d Cir. 2017) ...........................................6, 15, 17

*United States v. Cunningham*, 292 F.3d 115 (2d Cir. 2002) .......................................... 17

*United States v. Decker*, 838 F. App'x 640 (2d Cir. 2021) ............................................ 18

*United States v. Deutsch*, No. 23-6423, 2024 WL 2972810 (2d Cir. June 13, 2024) ..... 7, 10

*United States v. Eaglin*, 913 F.3d 88 (2d Cir. 2019) ..................................................... 10

*United States v. Frink*, 849 F. App'x 312 (2d Cir. 2021) .............................................. 13

*United States v. Griffin*, 839 F. App'x 660 (2d Cir. 2021) ............................................ 13

*United States v. Jimenez*, No. 22-1022, 2024 WL 1152535 (2d Cir. Mar. 18, 2024) ........ 13

*United States v. Kunz*, 68 F.4th 748 (2d Cir. 2023) ................................................... 8, 12

*United States v. Lifshitz*, 369 F.3d 173 (2d Cir. 2004) .................................................... 8

*United States v. Matta*, 777 F.3d 116 (2d Cir. 2015) ...................................................... 8

*United States v. Morrishow*, No. 23-7622, 2024 WL 4690524 (2d Cir. Nov. 6, 2024) 12, 13

*United States v. Oliveras*, 96 F.4th 298 (2d Cir. 2024) ........................................6, 8, 15

*United States v. Reyes-Arzate*, 91 F.4th 616 (2d Cir. 2024) .......................................... 16

*United States v. Rodriguez*, 159 F.3d 1349 (2d Cir. 1998) ........................................... 15

*United States v. Rodriguez*, No. 96-1531, 1998 WL 613780 (2d Cir. Sept. 2, 1998) ........ 15

*United States v. Salazar*, No. 22-1385, 2023 WL 4363247 (2d Cir. July 6, 2023) ........... 11

*United States v. Sims*, 92 F.4th 115 (2d Cir. 2024) ..............................................passim

*United States v. Thomas*, 827 F. App'x 72 (2d Cir. 2020) ............................................ 12

**Statutes**

18 U.S.C. § 3583 ............................................................................................................ 7

## STATEMENT OF JURISDICTION

Kareem Browning pled guilty to an information charging him with a violation of 18 U.S.C. § 1951(a), and the District Court (Reyes, J.) exercised jurisdiction pursuant to 18 U.S.C. § 3231. Sentence and judgment were imposed on October 17, 2024. ECF No.[1] 41. Mr. Browning filed a notice of appeal on October 21, 2024. ECF No. 43. The District Court entered an amended judgment later that day, and Mr. Browning filed an amended notice of appeal on October 22, 2024. A098–A103, A104. This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## QUESTION PRESENTED

1.      The District Court imposed a condition of supervised release requiring Mr. Browning to submit all his electronic communications to search by a probation officer upon reasonable suspicion of a violation of any condition of supervision. In explaining that condition, the District Court stated that "[t]he reason for that special condition is the existence of a gun in this case. Absent that, there would probably be no reason." Given the lack of any connection between Mr. Browning's possession of a firearm and any electronic device, did the District Court abuse its discretion in imposing the electronic search condition?

---

[1] Citations to "ECF No." refer to entries on the district court criminal docket for case number 1:24-cr-00047-RER. Citations to "A" refer to the appendix filed herewith. And citations to "PSR" refer to the presentence investigation report sent separately to the Court.

1

## STATEMENT OF THE CASE

On the evening of November 5, 2023, Mr. Browning and his brother Bennie Johnson entered a smoke shop in the Sheepshead Bay neighborhood of Brooklyn while two other men were talking with the store clerk. They began to rob the store at gunpoint, while the two other men served as lookouts. PSR at 3. Video of the robbery shows that neither Mr. Browning nor any of the other men involved in the robbery placed any phone calls, sent any text messages, or otherwise used a phone. A105. In fact, at no point did any of the men even remove a phone from their pockets.

The store clerk used her watch to contact a colleague, who notified police of the ongoing situation. PSR at 3. Officers arrived at the scene almost immediately and placed Mr. Browning and Mr. Johnson under arrest.[2] *Id.* The officers found two pistols in the basement of the smoke shop. And the officers found marijuana paraphernalia inside of a backpack both men used. *Id.*

Mr. Browning was charged by information with a single count of Hobbs Act Robbery under 18 U.S.C. § 1951(a). A009–A012. He waived indictment and pled guilty to the offense pursuant to a plea agreement that included an appeal waiver in which he agreed not to "file an appeal or otherwise challenge . . . the conviction or sentence in the event that the Court imposes a term of imprisonment of 125 months or below." A015. In his colloquy, Mr. Browning admitted to "help[ing] steal property

---

[2] The two men who acted as lookouts fled the area when law enforcement arrived. PSR at 3.

2

from a smoke shop in Brooklyn, New York." A043. He further stipulated that "the Government could prove at trial that the items that they attempted to take were traveling in interstate commerce or had travelled in interstate commerce." *Id.* The District Court accepted his plea.

The Probation Department prepared a presentence investigation report (PSR) that calculated Mr. Browning's Guidelines range at 110 to 137 months. PSR at 20.[3] The PSR further recommended, as relevant here, a special condition of supervised release that would require Mr. Browning to submit his "computers . . ., other electronic communications or data storage devices or media" to search upon reasonable suspicion of a violation of any condition of supervision. *Id.* at 22. It provided no explanation for why that condition was appropriate given the facts and circumstances of Mr. Browning's case.

At sentencing, the District Court adopted the PSR's Guidelines calculation but determined that a variance was appropriate in light of "Mr. Browning's violent and

---

[3] The PSR calculated this Guidelines range as follows. The base offense level for Hobbs Act Robbery is 20 under U.S.S.G. § 2B3.1(a). That level was increased by six because Probation determined that Mr. Browning "otherwise used" his firearm. U.S.S.G. § 2B3.1(b)(2)(B). PSR at 4. The PSR then increased the offense level by two because the store clerk had been physically restrained, U.S.S.G. § 2B3.1(b)(4)(B), and another one because a controlled substance was taken, U.S.S.G. § 2B3.1(b)(6). *Id.* at 5. Probation then removed three levels for Mr. Browning's early acceptance of responsibility through a guilty plea, resulting in a total offense level of 26. *Id.* Mr. Browning's prior convictions gave him ten criminal history points, which placed him in criminal history category V. *Id.* at 8. An offense level of 26 in criminal history category V renders a Guidelines range of 110 to 137 months.

traumatic childhood . . . including relative [poverty], physical abuse, serious neglect, the [time] he spent in foster care." A061. Those adverse childhood experiences, including "witnessing the murder of his childhood friend," led to "long-standing mental health issues, including documented diagnoses in the past and current" including "post-traumatic stress disorder, depression, [and] ADHD . . . ." *Id.* The District Court also recognized the "important role [Mr. Browning] play[s] in [his] family. . . . It's a good role." A065. Considering all of Mr. Browning's mitigating circumstances, the District Court imposed a prison term of 72 months, followed by three years of supervised release. A066, A099–A100.

The District Court next adopted the PSR's recommendations as to supervision and imposed the electronic search condition. In explaining its decision, the District Court stated: "The reason for that special condition is the existence of a gun in this case. Absent that, there would probably be no reason." A067. Mr. Browning objected, noting that "nothing in this case . . . involves any so[r]t or electronic devices or data . . . ." *Id.* The District Court responded that it would "note the objection, but [the condition]'s staying." *Id.* Mr. Browning reiterated his objection, explaining that "the Second Circuit has said that there has to be a tailored explanation for why a particular condition is applied, and I don't believe that there are any reasons here that would support the electronic search condition . . . ." A068. In response, the government stated that "in the government's experience, in order to facilitate the procurement of firearms, like the defendant had in this case, they're generally procured . . . by

4

communicating through text message or by cell phone . . . so I think that's why it's appropriate in this case." *Id.*[4]

Mr. Browning pointed out that there was "no evidence that that actually is the case here," and observed that "that type of generality . . . would be applicable in literally any 922(g) or other case involving a firearm . . . ." *Id.* The District Court simply responded: "All right, I'm going to keep the condition in here." A069.

Mr. Browning noticed this appeal on October 21, 2024, and amended his notice on October 22, 2024 in light of a nonsubstantive amendment to the District Court's judgment. A104. On December 3, 2024, the government moved to dismiss his appeal in light of the appeal waiver in his plea agreement. Mr. Browning remains in custody.

## SUMMARY OF ARGUMENT

This Court should strike the electronic search condition from the terms of Mr. Browning's supervised release. Conditions of supervised release must be based on an "individualized assessment" of a particular case, with "findings specific to the defendant" that justify them. *United States v. Sims*, 92 F.4th 115, 123 (2d Cir. 2024).

---

[4] The District Court noted that it had "discussed [the electronic search condition] in Mr. Johnson's case as well . . . ." A068. At Mr. Johnson's sentencing hearing, even after expressing some confusion over how an electronic search condition related to the offense conduct, the District Court imposed the condition based on Probation's statement that "[i]n the past we found that defendants, when they're obtaining a firearm, use their cell phones to communicate in order to purchase said firearms . . . ." A090. Again, there were no findings specific to either Mr. Johnson or Mr. Browning about the use of a phone or other electronic device.

The District Court didn't conduct any individualized assessment here, despite Mr. Browning's repeated objection. Nor is there a basis for the condition in the record. That Mr. Browning possessed a firearm doesn't justify the extraordinary intrusion into his privacy rights that comes with requiring him to submit all of his electronic devices and communications to search.

## ARGUMENT

## I. THE DISTRICT COURT ERRED IN IMPOSING THE ELECTRONIC SEARCH CONDITION

### A. Standard of Review

This Court reviews sentences, including conditions of supervised release, for procedural reasonableness. *Id.* at 122. "A district court commits procedural error where it fails adequately to explain its chosen sentence." *United States v. Burden*, 860 F.3d 45, 55 (2d Cir. 2017) (cleaned up). The required level of justification is higher "[w]here a condition of supervised release implicates a constitutional right[;]" this Court then conducts a "more searching" review. *United States v. Oliveras*, 96 F.4th 298, 304 (2d Cir. 2024) (first alteration in original).

### B. Supervised Release Conditions Must Be Based On Individualized Findings About A Particular Person's Conduct.

A district court's authority to impose conditions of supervised release is bounded by statute. The statute mandates certain conditions, and only permits a district court to impose any additional condition "to the extent that such condition—

(1)     is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);

(2)     involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and

(3)     is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)[.]"

18 U.S.C. § 3583(d).

In *Sims*, this Court further explained "the requirements a court must satisfy when imposing special conditions of supervised release." 92 F.4th at 123. Two are relevant here. *First*, "the court is required to make findings specific to the defendant, connecting those findings to the applicable § 3553(a) factors that would justify including the special condition in the case." *Id.* Even if a district court articulates its findings and the relevant statutory factors, however, this Court still reviews to ensure "a reasonable relationship between the factors considered by the district court in the individualized assessment and the special condition of release being challenged." *Id.* at 124. And if the district court fails to explain the basis for a particular condition, this Court "may uphold the condition imposed only if the district court's reasoning is 'self-evident in the record.'" *United States v. Betts*, 886 F.3d 198, 202 (2d Cir. 2018); *accord United States v. Deutsch*; No. 23-6423, 2024 WL 2972810, at *5 (2d Cir. June 13, 2024) ("Failure to provide such explanation is procedural error, which we may deem harmless only where the reasons for the special condition are 'self-evident in the record.'").

*Second*, "a special condition affecting a cognizable liberty interest must be 'supported by particularized findings that it does not constitute a greater deprivation of liberty than reasonably necessary to accomplish the goals of sentencing.'" *Sims*, 92 F.4th at 125 (quoting *United States v. Matta*, 777 F.3d 116, 123 (2d Cir. 2015)). Electronic search conditions implicate significant constitutional rights, given "the proliferation of the 'Internet of Things,' which has exploded the category of devices that could qualify as internet-connected . . . ." *United States v. Kunz*, 68 F.4th 748, 767 (2d Cir. 2023). They must, therefore, be "narrowly tailored and robustly supported by a district court." *Oliveras*, 96 F.4th at 316 n.8 (internal quotation marks omitted); *accord United States v. Lifshitz*, 369 F.3d 173, 190 (2d Cir. 2004) (noting that "[i]n order to comply with the requirements of the Fourth Amendment, the monitoring condition must be narrowly tailored, and not sweep so broadly as to draw a wide swath of extraneous material into its net"). Thus, even when a district court makes individualized findings that are linked to the § 3553(a) factors, this Court "ha[s] not hesitated to remand [electronic] monitoring conditions where . . . the record did not explain why . . . an alternative condition was insufficient." *Oliveras*, 96 F.4th at 316 n.8 (collecting cases).

**C.** **There's No Nexus Between Mr. Browning's Conduct And The Electronic Search Condition.**

The District Court failed to comply with *Sims*'s requirements. The only reason provided for the condition was "the existence of a gun in this case."[5] ST at 23. That explanation doesn't justify the electronic search condition for two reasons: it's not sufficiently individualized, and there's no rational—let alone robust—relationship between Mr. Browning's possession of a gun and his electronic devices.

> *1.* *The presence of gun, without more, isn't sufficiently individualized.*

The mere existence of a gun isn't an "individualized" reason for the electronic search condition, which the government acknowledged in asserting that firearms are "*generally* procured . . . by communicating through text message or by cell phone." ST at 24 (emphasis added). But there was no evidence here that *Mr. Browning* procured his gun through electronic or digital media. Because a condition of supervised release must be based on "findings specific to the defendant," *Sims*, 92 F.4th at 123. the District Court's reliance on the government's generalized reference to hypothetical other firearm cases was error.

This Court has rejected exactly the kind of generality the District Court and government relied on here. In *United States v. Deutsch*, a district court imposed an electronic search condition on a person convicted of four counts of sexual

---

[5] The District Court didn't articulate which, if any, § 3553(a) factor the presence of a firearm relates to.

exploitation of a minor. 2024 WL 2972810, at *5. In explaining the condition, the district court simply stated that it "pretty much go[es] with the territory when we are dealing with these types of crimes." *Id.* This Court found that justification was inherently not "individualized," and "follow[ed] a long line of decisions in which we have vacated similarly extensive special conditions of supervised release imposed without individualized assessment or stated reasons." *Id.* at *5 n.4. Similarly, in *Oliveras*, this Court vacated a search condition that was imposed based on the sentencing court's view that "individuals convicted of drug offenses tended to reoffend while on supervised release" and "offenders do not leave drugs out in the open" when doing so. 96 F.4th at 314. In finding that justification insufficient, this Court was clear: "exclusive reliance on . . . generalized considerations is inconsistent with the requirement that the district court make an 'individualized assessment' as to each defendant when determining whether to impose a special condition." *Id.* (quoting *United States v. Eaglin*, 913 F.3d 88, 94 (2d Cir. 2019)).

The same principle underlying *Deutsch* and *Oliveras* applies here. It's not enough for a district court to impose a special condition for a categorical reason—i.e., a reason that would apply to anyone convicted of a particular offense. That makes good sense; such a rationale would hardly be "individualized." As Mr. Browning noted, the District Court's only rationale for the condition would apply equally in any case involving a firearm, making an electronic search condition automatically appropriate for any conviction under 18 U.S.C. § 922(g), 18 U.S.C. § 924(c), or any of a host of

10

federal statutes. A068. Without making any findings specific to Mr. Browning, the District Court didn't engage in the necessary individualized assessment.

> 2. *Possessing a firearm is not a "robust justification" for an electronic search.*

An electronic search condition infringes on significant Fourth Amendment rights. As the Supreme Court has recognized, cell phones "are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy." *Riley v. California*, 573 U.S. 373, 385 (2014); *accord United States v. Salazar*, No. 22-1385, 2023 WL 4363247, at *3 (2d Cir. July 6, 2023) ("Moreover, the Supreme Court has observed that cell phones are 'indispensable to participation in modern society.'"). They "place vast quantities of personal information literally in the hands of individuals." *Riley*, 573 U.S. at 386. Given modern storage capacities, cell phones contain "a digital record or nearly every aspect of [people's] lives—from the mundane to the intimate." *Id.* at 395. There is simply no analog for the quantity, variety, and temporal scope of data maintained on a cell phone. *Id.* at 394–95. Thus, cell phones, "as a category, implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse." *Id.* at 393. Searches of a cell phone, in fact, "would typically expose to the government far *more* than the most exhaustive search of a house. . . ." *Id.* at 396 (emphasis in original).

The search condition here applies to even more than just cell phones, covering all his "electronic communications" from any device. A066. As this Court recognized

in *Kunz*, technology has raced forward in the decade since *Riley*; innumerable devices are now networked, which means they send and receive information in ways that are arguably electronic communication. *Kunz*, 68 F.4th at 767. Searches of electronic communications thus reveal "the privacies of life" to a greater degree than ever before. *Riley*, 573 U.S. at 403.

Recognizing that electronic search conditions curtail significant privacy interests, this Court has only approved them "where the conduct underlying a conviction or prior conviction has involved the use of computers or other electronic devices." *United States v. Thomas*, 827 F. App'x 72, 75 (2d Cir. 2020). Here, by contrast, there's no evidence that Mr. Browning's possession or use of the gun was in any way related to an electronic device or communication. At no point did Mr. Browning, or any of the other men involved in the robbery, use a phone or other form of digital communication. The PSR made no findings about any electronic communications in any of Mr. Browning's prior convictions. In sum, "[t]here is scant evidence in the record indicating that the instant offense or any of [Mr. Browning's] prior offenses involved the use of electronics." *United States v. Morrishow*, No. 23-7622, 2024 WL 4690524, at *3 (2d Cir. Nov. 6, 2024). Without such evidence, there is "some puzzlement over how this search condition is reasonably related to [Mr. Browning's] crime of conviction . . . ." *United States v. Griffin*, 839 F. App'x 660, 661 n.5 (2d Cir. 2021) (vacating electronic search condition imposed for bank robbery conviction); *accord United States v. Jimenez*, No. 22-1022, 2024 WL 1152535, at *3 (2d Cir. Mar. 18,

2024) (vacating electronic search condition imposed for conviction under 18 U.S.C. §
922(g)(1) and (2)); *United States v. Frink*, 849 F. App'x 312, 319 (2d Cir. 2021) (vacating
electronic monitoring condition where "nothing in the record suggests that the
underlying state conviction involved the use of computers, or that an internet access
device was involved in the conduct underlying any of Frink's convictions or violations
of supervised release").

 *Morrishow* is instructive. There, the defendant drew and fired his gun into an
apartment building during the course of an attempted robbery, though he did not
injure anyone. 2024 WL 4690524, at *1. Just before entering the apartment building,
the defendant removed a cell phone from his pocket and looked at the screen for
approximately two seconds. *Id.* In sentencing the defendant for a violation of 18
U.S.C. § 922(g)(1), the district court imposed an electronic search condition. The
government defended that condition, arguing that the defendant's two-second glance
at his phone during the attempted robbery meant that the phone was "likely used" in
connection with the offense. *Id.* at *3 n.1. This Court was "unconvinced," reasoning
that "it is unknown what Morrishow did on his cellphone when he pulled it out of his
pocket." *Id.* The condition was vacated, notwithstanding the defendant's undisputed
possession of a gun, conviction for possession of ammunition, and glance at a phone
during commission of the offense. *Id.* at *3.

 The electronic condition here is even less justified than in *Morrishow*. Unlike in
*Morrishow*, Mr. Browning never glanced at a phone or other electronic device at any

point during his offense. Neither the government nor the District Court identified any evidence that Mr. Browning engaged in any kind of electronic communication in connection with the offense, either. There's no justification, let alone a "robust" one, for the condition here. *See Sims*, 92 F.4th at 126 (condition prohibiting association with specific gang held invalid where "[n]othing in the record indicate[d] that the offense was in any way related to the [prohibited gang] or any other gang, or that any association with a gang contributed to Sims's prior criminal behavior").

At a minimum, the breadth of the condition warrants relief. Even if this Court accepts that electronic search conditions can be justified by the general, background possibility that people acquire guns using cell phones, that's no reason to authorize a search of Mr. Browning's electronic devices upon suspicion of *any* violation of *any* condition of supervised release. The electronic search condition isn't just limited to when there's reasonable suspicion that Mr. Browning has obtained a gun. As written, the condition would permit Probation to search all of Mr. Browning's electronic communications—his texts, emails, messages, shared documents, or any other information transmitted from any of his networked devices—based on suspicion of even the most technical of violations. If Probation believes, say, that Mr. Browning has travelled from Brooklyn into Manhattan without prior approval, his entire digital life will be opened for inspection. The scope of this intrusion vastly outweighs the marginal benefit it would add to the stated purpose of preventing Mr. Browning from obtaining a gun while on supervised release; if there's reasonable suspicion he has

14

done so, Probation could search Mr. Browning's "person, property, house, residence, [or] vehicle" for it. It's difficult to imagine a scenario where Mr. Browning obtains a gun but Probation cannot find any evidence of it by searching those other locations. The burden of the electronic search condition and its limited efficacy in addressing the District Court's stated reason for it show that the condition isn't "narrowly tailored" in this case. *Oliveras*, 96 F.4th at 316 n.8.

### D. This Court Should Strike The Condition Rather Than Remanding For Resentencing.

Upon concluding that a condition of supervision was improperly imposed, this Court has sometimes vacated and remanded to provide the district court an additional opportunity to adequately explain the condition. *See, e.g.*, *Burden*, 860 F.3d at 57 (vacating and remanding "for the district court to separately state its reasons for the term of supervised release imposed"). In this case, however, there's no need for resentencing because the District Court itself already stated that "[a]bsent that [the presence of a gun], there would probably be no reason" for the electronic search condition. A067. In the interest of judicial economy, this Court should simply strike the condition instead of remanding for resentencing. *See, e.g.*, *United States v. Rodriguez*, No. 96-1531, 1998 WL 613780, at *1 (2d Cir. Sept. 2, 1998) (modifying supervised release term rather than remanding for district court's further consideration in the interest of judicial economy).

## II.     THE GOVERNMENT'S MOTION TO DISMISS SHOULD BE DENIED

The appeal waiver in Mr. Browning's plea agreement doesn't bar review of the electronic search condition. Plea agreements, including any appeal waivers, "are construed according to contract law principles, tempered with awareness of due process concerns for fairness and adequacy and construed strictly against the government, which is both the drafting party and has an overwhelmingly superior bargaining position." *United States v. Reyes-Arzate*, 91 F.4th 616, 622 (2d Cir. 2024) (cleaned up). So "waivers of appellate rights [in] plea agreements are to be applied narrowly and construed strictly against the government." *Id.* "Under this principle of narrow construction, [this Court] ha[s] held that a sentencing appeal waiver 'can be construed narrowly to cover only challenges to terms of incarceration,' and does not unambiguously bar challenges to . . . terms of supervised release, if the waiver does not so specify." *Id.* Put differently, an appeal waiver can only preclude this Court's review of issues it specifically and explicitly lists.

*Reyes-Azarte* controls here. The appeal waiver in Mr. Browning's plea agreement doesn't make any mention of supervised release. Instead, it simply says that Mr. Browning "agrees not to file an appeal or otherwise challenge . . . the conviction or sentence in the event that the Court imposes a term of imprisonment of 125 months or below." A015. The only specific issues waived are "any argument that (a) the statutes to which the defendant is pleading guilty is [sic] unconstitutional and (b) the

16

admitted conduct does not fall within the scope of the statutes." A016. This waiver language says nothing about supervision; construed narrowly, as it must be, it doesn't cover challenges to any part of Mr. Browning's supervised release.

This Court has found that similar language in appeal waivers does not bar consideration of challenges to supervised release. In *United States v. Cunningham*, for example, the government sought to dismiss an appeal challenging the length of a supervised release term by pointing to an appeal waiver that agreed "not to file an appeal or otherwise challenge his conviction or sentence in the event that the Court imposes the sentence" agreed upon by the parties. 292 F.3d 115, 116 (2d Cir. 2002). Observing that "[n]o mention was made of supervised release" in the waiver, this Court declined to dismiss the appeal. *Id.* at 117.

Indeed, this Court has refused to dismiss appeals challenging aspects of supervised release even in the face of broader, more explicit language. In *Burden*, for example, this Court denied a motion to dismiss an appeal challenging a condition of supervised release notwithstanding an appeal waiver in which a defendant "waive[d] and g[ave] up his right to appeal and/or collaterally attack *any alleged error* in connection with the resentencing . . . ." 860 F.3d at 50 (emphasis added). While acknowledging that this language was "broad as a literal matter," this Court still found that they did not bar the appeal because they lacked any specific reference to supervised release conditions. *Id.* at 55. And in *United States v. Decker*, this Court declined to dismiss an appeal that challenged a condition of supervision

notwithstanding a waiver of "the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine and supervised release" as set forth in the plea agreement. 838 F. App'x 640, 641 (2d Cir. 2021). Even this reference to supervised release was insufficient to constitute waiver, because it "did not clearly waive the right to appeal the conditions of his supervised release." *Id.* at 642.

## <u>CONCLUSION</u>

This Court should strike the electronic search condition from Mr. Browning's sentence. At minimum, it should vacate the condition and remand to the District Court for a limited resentencing.

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 12, 2025, I served a true and correct copy of the foregoing opening brief via electronic notice by the ACMS system on all counsel of record.

Dated:      New York, New York
            March 12, 2025

/s Ashok Chandran
**Ashok Chandran**
Assistant Federal Defender

## **CERTIFICATE OF COMPLIANCE**

This opening brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(i) and 32(e), and Local Rule 32(a)(4)(A) because it contains 4,856 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), as counted by the word-processing system used to prepare it.

This opening brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word with 14 characters per inch in Garamond type style.

Dated:      New York, New York
            March 12, 2025

/s Ashok Chandran
**Ashok Chandran**
Assistant Federal Defender